**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN,<br><br>Plaintiff,<br><br>v.<br><br>EXTENDED STAY AMERICA, INC., ESH HOSPITALITY, INC., BRUCE N. HAASE, DOUGLAS G. GEOGA, ELLEN KESZLER, JODIE W. MCLEAN, KAPILA K. ANAND, RICHARD F. WALLMAN, THOMAS F. O'TOOLE, LISA PALMER, NEIL BROWN, STEVEN KENT, SIMON TURNER, EAGLE PARENT HOLDINGS L.P., THE BLACKSTONE GROUP, INC., and STARWOOD CAPITAL GROUP,<br><br>Defendants. | Civil Action No. 1:21-cv-3272<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Extended Stay, Inc., ("Extended Stay"), its controlled subsidiary and paired-share REIT, ESH Hospitality, Inc. ("ESH" and along with Extended Stay, the "Company"), and the members Extended Stay's and ESH's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Extended Stay and ESH

by Eagle Parent Holdings L.P. ("Parent"), a joint venture of affiliates of The Blackstone Group Inc. and Starwood Capital Group (the "Buyout Group").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 13, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Eagle Merger Sub 1 Corporation ("MergerCo 1"), an acquisition subsidiary of Parent, will merge with and into Extended Stay and Eagle Merger Sub 2 Corporation ("MergerCo2"), an indirect acquisition subsidiary of Parent, will merge with and into ESH with Extended Stay and ESH continuing as surviving entities (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Extended Stay stockholder will receive $19.50 in cash per each paired share owned (the "Merger Consideration"). However, under the terms of the Merger Agreement, the Buyout Group may request that the Company pay a special distribution immediately prior to the closing of the Proposed Transaction of up to $1.75 per paired share, and in that case, the Merger Consideration would be decreased by that dividend amount.

3. As discussed below, Defendants have asked Extended Stay's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Parent, MergerCo 1, MergerCo 2, and Blackstone Group are headquartered in this District; the Company's proxy solicitor, Okapi Partners LLC, is headquartered in this District; and finally, the Company is listed with the NASDAQ Stock Exchange, also headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Extended Stay and its paired-share REIT, ESH and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Bruce N. Haase has served as a member of the Board, Chief Executive Officer, and President of the Company since November 2019 and has served as the Chief Executive Officer and President of ESH also since November 2019 and a director of ESH since April 2018.

11. Individual Defendant Douglas G. Geoga has served as a member of the Board of the Company since July 2013 and is the Chairman of the Board; and as Chair of the Board of ESH since November 2013.

12. Individual Defendant Ellen Keszler has served as a member of the Company Board since February 2018.

13. Individual Defendant Jodie W. McLean has served as a member of the Company Board since June 2017.

14. Individual Defendant Kapila K. Anand has served as a member of the Board of the Company since July 2016 and as a member of the Board of ESH since May 2017.

15. Individual Defendant Richard F. Wallman has served as a member of the Board of the Company since July 2013 and as a member of the Board of ESH from November 2013 to May 2016.

16. Individual Defendant Thomas F. O'Toole has served as a member of the Company Board since May 2017.

17. Individual Defendant Lisa Palmer has served as a member of the ESH Board since August 2014.

18. Individual Defendant Neil Brown has served as a member of the ESH Board since May 2017.

19. Individual Defendant Steven Kent has served as a member of the ESH Board since May 2017.

20. Individual Defendant Simon Turner has served as a member of the ESH Board since March 2020.

21. Defendant Extended Stay is a Delaware corporation and maintains its principal offices at 11525 N. Community House Road, Suite 100, Charlotte, North Carolina 28277. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "STAY."

22. Defendant ESH is the Company's paired-share REIT and is incorporated in Delaware and maintains its principal offices also at 11525 N. Community House Road, Suite 100, Charlotte, North Carolina 28277.

23. Blackstone Group is a Delaware corporation and maintains its principal offices at 345 Park Avenue, New York, New York 10154. Blackstone Group's stock trades on the New York Stock Exchange under the symbol "BX."

24. Starwood Capital Group is a private investment firm specializing in global real estate and maintains its principal offices at 591 West Putnam Avenue, Greenwich, Connecticut 06830.

25. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

26. The defendants identified in paragraphs 10-24 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

27. Extended Stay America, Inc., together with its subsidiaries, owns, operates, develops, and manages hotels in the United States. As of December 31, 2020, the company had a network of 646 hotels. It serves customers in the mid-priced extended stay segment. The company also licenses Extended Stay America brand to third-party franchisees. Extended Stay America, Inc. was founded in 1995 and is headquartered in Charlotte, North Carolina.

28. On March 15, 2021, the Company and ESH announced the Proposed Transaction:

> CHARLOTTE, N.C., March 15, 2021 (GLOBE NEWSWIRE) -- Extended Stay America, Inc. ("ESA") and its paired-share REIT, ESH Hospitality, Inc. ("ESH" and together with ESA, the "Company") (NASDAQ: STAY) announced today that it has signed a definitive agreement to be acquired by a 50/50 joint venture between funds managed by Blackstone Real Estate Partners ("Blackstone") and Starwood Capital Group ("Starwood Capital") for $19.50 per paired share in an all-cash transaction valued at approximately $6 billion.
>
> The $19.50 per paired share consideration represents a premium of 23.3% over the 30-day volume-weighted average share price ending March 12, 2021 and a premium of 15.1% over the closing stock price on March 12, 2021.
>
> Doug Geoga, Chairman of the Boards of the Company said, "After a thorough review of the Company's business plan, the Boards concluded that the immediate cash premium offered by this transaction is compelling for stockholders. We are delighted with this outcome."
>
> Bruce Haase, CEO and President of the Company said, "We are pleased to announce this transaction with Blackstone and Starwood Capital, two of the most experienced investors in the hospitality space with impressive track records of building value in a wide variety of real estate assets, and we look forward to this partnership and continued growth." He added, "The Boards and senior management are especially grateful to the excellent team of leaders and associates who have made this company such a leader in the lodging industry and we are confident in the Company's continued success under private ownership."

Tyler Henritze, head of US acquisitions for Blackstone Real Estate commented, "Travel and leisure is one of Blackstone's highest conviction investment themes, and we have confidence in the extended stay model. We helped create this company nearly twenty years ago, and believe our expertise puts us in a unique position to add long-term value."

Barry Sternlicht, CEO of Starwood Capital, added, "Extended Stay has demonstrated resilience over the past year despite persistent challenges due to government lockdowns and travel restrictions. We are excited about the Company's growth opportunity as restrictions ease and we're confident that, in partnership with Blackstone and the Company, our team has the right experience to drive continued success."

The transaction has been unanimously approved by ESA's Board of Directors and has also been approved by ESH's Board of Directors. Completion of the transaction, which is expected to occur in the second quarter of 2021, is contingent upon customary closing conditions, including approval of the Company's stockholders. The transaction is not contingent on receipt of financing. In connection with the transaction, an affiliate of Starwood Capital, which owns approximately 9.4% of Company's outstanding paired shares, has entered into a support agreement whereby it has agreed to vote its shares in favor of the transaction.

The Company does not expect to pay its regular quarterly distribution during the pendency of the transaction except for the previously declared $0.09 distribution on March 26, 2021. However, under the terms of the merger agreement, the acquiror may request that ESA pay a special distribution immediately prior to the closing of up to $1.75 per paired share, in which case the cash consideration paid in the merger will be reduced by the amount of the distribution.

Goldman Sachs & Co. LLC is serving as financial advisor to the Company and Fried, Frank, Harris, Shriver & Jacobson LLP is acting as legal counsel.

J.P. Morgan and Citigroup Global Markets Inc. are acting as financial advisors and providing debt financing to Blackstone and Starwood. Simpson Thacher & Bartlett LLP is acting as legal advisor to Blackstone, and Kirkland & Ellis LLP is acting as legal advisor to Starwood Capital.

* * *

29. The Board of both companies have unanimously agreed to the Proposed Transaction. It is therefore imperative that the companies' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. The Materially Incomplete and Misleading Proxy Statement**

30. On April 13, 2021 Extended Stay and ESH filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

31. The Proxy Statement fails to provide material information concerning financial projections by prepared management and given to and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of the fairness opinions, that the management of the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about stand-alone valuations. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that management

provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

32. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Adjusted EBITDA; Unlevered Free Cash Flow; and Net Debt, but fails to provide a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a); and in the case of Net Debt, line items used to calculate these figures.

33. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

34. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

> usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

35. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

36. With respect to Goldman Sachs' *Illustrative Premia and Multiples* analysis, the Proxy Statement fails to disclose: (i) the Company's and ESH's net debt as of December 31, 2020 and (ii) total number of fully diluted paired shares outstanding as of March 14, 2021.

37. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) Goldman's basis for applying price to one-year forward EBITDA multiples of 9.0x to 11.0x earnings per share of Company common stock estimates for each of the fiscal years 2021 to 2024; (ii) the inputs underlying the discount rate of 9.56%; and (iii) the Company's and ESH's cost of equity.

38. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values of the Company and ESH as calculated by Goldman Sachs; (iii) the inputs and assumptions underlying the use of perpetual growth rate ranging from 1.00% to 1.50%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.00% to 8.00%; (v) the Company's and ESH's weighted average cost of capital; (vi) the number of fully diluted outstanding paired shares as of March 14, 2021.

39. With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Goldman Sachs in the analysis; (ii) the premia of each transaction; and (iii) the dates of announcement and dates of closing of the transactions observed.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Extended Stay and/or ESH within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Extended Stay, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Extended Stay and ESH, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Extended Stay and ESH, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: April 14, 2021

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*

Gloria Kui Melwani
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*